And at this time, we'll hear Yetman v. Capital District Transportation. Mr. Dunn, good morning. Good morning, Your Honors. My name is Ronald Dunn. I represent Margaret Yetman. She was a bus driver for the Capital District Transportation Authority. Because this is a motion for summary judgment case, facts are everything, I can briefly summarize them. Margaret Yetman is a pretty sympathetic plaintiff. She had a very difficult and challenging task ahead of her as a single parent, who had a son with severe autism and a lot of medical conditions associated with that. She had a daughter with a high-risk pregnancy. She had a right to seek family medical leave. She did. She did. It was granted. And Capital District Transportation Authority granted it. In the application of that authority, because there was quite a bit of intermittent leave, and I would submit some confusion on the authorities' part as to what you can and can't ask somebody when they put in for leave and what you can and can't require, over the course of several years, there was probably 80 instances, at least the record reflects, that there's 80 instances of Family Medical Leave Act qualified events, which she gave notice to the employer on, which she was denied. Authority denies that. That's fine. But on this record, these facts, there's about 80, a little more than 80 instances. Are they collected someplace in the appendix where we could look at them? They are, and I'm going to have to go through that. Well, I'll do that on rebuttal if that's okay, Your Honor. So she was under a great deal of pressure. She was being pressured because of her attendance, and in the face of that pressure, she resigned. There were some intervening events. She got some residential. The resignation followed on after an absence that she did not or could not justify under the Family and Medical Leave Act. That's correct. Late June, and then she resigned in early July, and they said, you know, if you call, you know, she just missed work, and they said, well, you know, you can call in, obviously, if you have a problem. She said she did, and it turned out she didn't, or she was unwilling or unable to prove that she did. Yes, but it's not like she's being confronted with you're fired. And then she wasn't fired. She resigned. I understand. She resigned in the face of all of this, which presents, you know, lots of contextual, factual questions. There's no doubt about that. I'm not sure how many contextual questions it presents. She resigned. She resigned. There's no doubt about that. So then there's some intervening events. Her son is placed in an appropriate residential treatment and educational facility, so she no longer is going to have these kinds of intermittent leaves. Her daughter gives birth to a healthy child, thank goodness, and moves out of the house, so she's no longer going to have to have those intermittent leaves connected with her daughter. And her own personal health is good. She's a survivor, a cancer survivor, so her health is stabilized. She then reapplies to the CDTA for a job as an open, available series of jobs. There were several. They're open and they're available. She's denied. And on this record, when confronted with the reasons why she was denied, the person who's basically responsible for making those decisions admits, under oath, in a deposition, that her attendance was a factor. He also says during the deposition that specifically, I think, that the FMLA was not a part of that assessment. Correct. So now we get to Plum. In the context of that. Plum or not, was there some evidence that contradicted that testimony? The incredibleness of that opinion, because he didn't say it out loud to anybody. That was the only. It's incredible, and it's done in a self-serving way to defend his conduct later. It's not like there's a piece of paper or a record of him parsing that out previously. So we have a. . . Who makes records of every time they don't hire somebody? If you hire somebody, you'll have a record. But if you don't hire somebody, what kind of document do you produce? We hire someone. We hire someone with an extensive record of Family Medical Leave Act applications. That's the distinction. This is not a hiring case. This is a we hiring case. How many times did she receive criticisms for absence that were not Family Leave Act justified? There was, on these facts, on this record, the way that you call in is you call in to the dispatcher. I don't think you're being responsive. I asked how many times did she receive criticism. More than once. More than once. And there was a constant debate between her and. . . Written criticisms, and did she object to any of those? She did. And she provided her Palmer with evidence of, look, these were Family Medical Leave Act absences, and he denies that he received them. That's fine. On these facts, on this record, there's a question of fact as to whether or not she had that back and forth with him. And in each case. . . I'm sorry, but I understood Judge Kearse's question to be whether there were non-Family Medical Leave Act absences. There were some non-Family Medical Leave Act absences. Because then you moved around to the fact that they were Family Medical Leave Act, which was not responsive. Well, I apologize for not understanding the breadth of your question. I can tell you that. . . That's actually the narrowness of my question. Well, fair enough. There were discussions about whether or not. . . Didn't she receive written criticisms for absences that were not justified? Absolutely. And didn't she agree with those? Some of them, yes. Some of them, no. And that's the nature of the discussion with the person who was the deciding official. That some of them, I agree with. Some of them, I do not. The authority has a policy. It's a rolling year policy of. . . They're called misses or events. And you get 12 in a year of absences. You get 12 in a year under this policy. And if you exceed the 12 on a month, then you get dinged through a series of progressive disciplines. By dinged, you mean what? Terminated? Well, it depends. No, there's a progressive discipline policy. There's a progressive discipline policy at CDTA. I mean, there's many reasons why you would have a miss. There's a miss of a whole schedule, and then there's a late. And they're considered the same thing. If I'm 10 minutes late, that's considered a miss. It's the same whether it's 10 minutes late or I never show up at all. And I'm not arguing, you know, for the purposes of this motion. . . Are you saying that the progressive discipline starts after 12 instances of lateness or absence? I am. I am. They have a policy that's got this rolling miss policy. No wonder you can't get a miss. More than two in a month? Which is 12 in a year or more than two in a month. Yes. So if in a single month there were three misses. . . You would have a counseling. You'd be called in, and you would be counseled. And there was some of this going on. There's no doubt about that. But the question, to my mind, the mistake, the easiest mistake to find, is the rehire case. Because there is no doubt that she had a very complex attendance policy. She was using FMLA leave within her allotment, but she was using it a lot. You got document discovery. Is that correct? Yes. And just to go back to my initial question, the person who you claim was responsible, at least at the front end, for refusing to rehire her says, I did not rely on her FMLA absences. That's what I think his deposition testimony was. In his deposition he said that. And was there any documents? And your answer to that was, well, that's incredible. But were there any documents that undermined that claim? A direct smoking gun document? No. Any document? Yes. I think the level, the number of legitimate FMLA absences and the number of . . . No, no, no. Those are my documents. Those are your documents. Okay. That's what I have. I don't have any piece of paper that directs smoking gun evidence that what he said was a lie. When she applied for rehire, did she inform them that she no longer had daily care responsibilities for her son or for her daughter who had now delivered a baby and was living somewhere else? Yes. So what reason is there to think that she was denied rehire because they thought she would take Family and Medical Leave Act? Because . . . Leave. Because Family and Medical Leave Act is inconvenient for employers. There's no doubt about that. But you just said in response to Judge Kearse's question that she had explained that the circumstances that had precipitated such leave no longer existed. Correct. But for the invidiousness of some perceptions that give rise to retaliation and discrimination, I might agree with you. But I don't. And the reason I don't is because that's just the nature of the context of these. These are very difficult cases. And because of that . . . The problem is if this got to a jury, as I understand what you're saying, unless something else came up, you'd be asking them to speculate about a number of different things relating to the decision not to rehire. Well, not really, because if he's articulating what's the . . . He says attendance and other reasons. Like what? Well, you did that during the . . . I did it during the deposition. You did it during the deposition. Yes, that's right. And when he ticked through the other reasons, one was, yes, there was a prior discipline in your record where the discipline was grieved and you were reinstated, and that was three years prior to her resignation, and plus her attendance. And I just . . . And some incident on the bus that she failed to report. Three years prior to the resignation. There was a woman who knocked her leg, and there was a determination that she was fine, and then there was an FMLA event at the end of her tour, and she did not report that. But that was three years prior to the resignation, so I find it incredible, and I think a jury can find incredible that that's part of the rationale, just because of the distance in time. You have a minute's rebuttal if there are no more questions. Thank you, Your Honor. Mr. Parente. Your Honor, Clemente Parente for CDTA and David Palmer. I guess I would like to start where Mr. Dunn left off on the last issue. In response to your question, Your Honor, if I could, there was plenty of discovery here, and there was ten depositions that the plaintiffs took of other individuals, including union representatives, and no one came forward either with a smoking gun that Mr. Palmer's real reason for not rehiring was that he didn't want to have someone who used a lot of FMLA leave. There's no smoking gun. There's not a scintilla of circumstantial evidence that this was a pretext, what he said in his deposition was a pretext, or the reasons for putting on the rehire form. No. As you point out, Your Honor, he had stated, Superintendent Palmer stated, that after Ms. Yetman resigned, he completed a form that CDTA provides on a termination or a resignation. That form has a box that says, is this person subject to rehire? And he checked no. So then months later, when Yetman reapplied for several different positions, Human Resources looked at the form and saw that there was a checkmark for no. The deposition testimony of those individuals was that they called Palmer, and they asked him simply, are you sure? Is it still a no? He said yes. He's the ultimate decision maker in that regard. I don't dispute that, Your Honor, because there were three people in the Human Resources Department who all said, we rely on the superintendent. So that's not an issue? That's not. On the rehire? Right. So, I mean, Your Honor, the question really is, the question in all summary judgment cases, is are there material and genuine facts? It seems to me that what the plaintiff is trying to do here is simply expand summary judgment law to the proposition that, well, it is a question of fact for a jury to decide about credibility, and although we don't have any evidence, not circumstantial or direct or otherwise, that Mr. Palmer is lying about the rehire, then a jury should still get the case. But that's not the law, and it hasn't been the law since summary judgment was put in the rules. I think your adversary's argument is that it would be natural and even irresistible for an employer to refuse to rehire somebody who had extensive absences, notwithstanding that they were privileged under the Family and Medical Leave Act. Well, Mr. Palmer, the only evidence in the record is that Palmer said he didn't even consider any of the absences that were due to the Family and Medical Leave Act. In fact, the evidence is otherwise. The authority and Mr. Palmer granted every single request for FMLA leave, and every time that request was made, she was given proper documentation, proper paperwork to fill out, and she was granted the leave. I believe there were four different requests, Your Honor. She was granted leave for her own condition in November of 2007. She was granted leave for her own condition in April of 2008. She was granted leave for her daughter's condition with respect to CIS in May of 2007, and she was granted intermittent leave for her son, Walter, again in 2007, and then on recertification was granted leave again on 2009. So there's not one time where she wasn't granted the leave, and the evidence is clear that all she needed to do with respect to implementing the days that she needed to take under the granted leave, all she needed to do was call in and say FMLA. She didn't need any other explanation. Intermittent, the grant of intermittent leave? Yes, Your Honor, because the other leaves had a beginning and an end date. Yes, with respect, and she admitted in her deposition testimony that she didn't do that. Now, she claimed later, and she claims in a declaration that, well, I went back and talked to Palmer and told him that, you know, you were wrong, and I was embarrassed for keeping taking it. But if that's the standard, coming in after your deposition and putting in a declaration after the fact, well, this is what I really did. I really came in afterwards and told him, you know, we need to go back and change some of these dates. Then every single plaintiff after the deposition can defeat a motion for summary judgment after the papers are filed by parsing together a good story and a fact without anything in the record evidence. With respect to the claims for individual liability of Mr. Palmer, that requires, well, two things. It requires him to be an employer, and the court below made a determination, which I would assert is really a legal determination, that he was an employer. And in addition, it requires under the New York State human rights law, in order to find individual liability, you can only be individually liable as an aider and a better. In order to be an aider and a better, you need to have a claim that is established against the employer itself, against CDTA. Since they're all dismissed, you can't have liability here for Mr. Palmer. Unless the court has any other questions, I'm completed with my argument. Thank you. Thank you. We'll hear rebuttal. Your Honor, at page 15 to 20 of our brief, main brief, that's where you find the list of occasions when she was improperly charged for absences that were really FMLA-qualified absences. I would point the court to . . . Those were requests by her for FMLA leave that were denied? Some were requests, and some were notice to the employer. The FMLA creates . . . You don't have to use magic words like, I want FMLA leave. That's not required under the statute. The employer was on notice that she was entitled to FMLA leave, and she was using words which a reasonable employer should know implicates the FMLA requirement. I would point to a case called Graziato v. Culinary Institute of America. Your Honor, you were on that bench. I can't use the standard on summary judgment. I can't say it better than you said it in that case. In these kinds of cases, it's very rare that somebody admits, I didn't rehire the person because they took FMLA leave. It's not impossible. It's just rare. You have to find it without the smoking gun. That's why in the FMLA context and in discrimination context all across the board, the courts say that the plaintiff is given wide latitude, and you can prove a case by attacking the incredibleness of the stated reason. It's just that simple. One last point on the individual liability. I think the cases are pretty clear. It's an economic realities test under the FLSA. That's also in this case. So the court below is simply wrong about that. Thank you. Thank you both. We will reserve decision.